UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In Re:

1881 Central Avenue, LLC,

Debtor.

Case No.: 12-12394-1-rel
Chapter 11

### AFFIRMATION OF HARVEY D. MERVIS, ESQ. IN SUPPORT OF NOTICE OF LIEN AND MOTION FOR SEQUESTER, INJUNCTION, TURNOVER AND ACCOUNTING OF RENTS

Harvey D. Mervis, Esq., duly affirms as follows:

1. I am a partner of Hinman, Howard & Kattell, LLP, attorneys for Community Bank, N.A., as successor by merger to Wilber National Bank (hereinafter "Community Bank" or "Bank").

2. I submit this affirmation to give notice pursuant to 11 U.S.C. §546(b) of Community Bank's lien on any rents paid or lease payments made to the Debtor.

3. I further submit this affirmation in support of Community Bank's motion pursuant to 11 U.S.C. §363(c) and 105(a) for sequestration, turnover, and accounting of income and expenses and an injunction that the Debtor not dissipate or otherwise use such rents other than as payment on its secured debt to Community Bank. This Court has jurisdiction pursuant to 28 U.S.C. §157(b)(2)(A), (E), (K), and (O).

4. The Debtors operate a restaurant and motel on their real property. (The Debtor's Schedules do not disclose the motel. Furthermore, the Debtor's Schedules disclose only real estate it owns at 1881 Central Avenue and not the lot the Debtor owns at 1885 Central Avenue, which upon information and belief has significant value.

These issues will be addressed in the Motion to Dismiss in this case and for other relief that Community Bank will be filing shortly.)

5.      As set forth in the Debtor's Schedules, a copy of which is annexed hereto as **Exhibit "A,"** the only secured creditors are Community Bank, which is owed $1,461,000.00, and the Town of Colonie, which is owed $180,000.00 in property taxes. There are no unsecured creditors.

6.      The Debtor defaulted on its mortgage payments to Community Bank on or about February 2, 2010.  Community Bank thereupon brought a foreclosure action.  A copy of the Summons and Complaint filed April 5, 2010 is annexed hereto (without exhibits) as **Exhibit "B."**  Among other relief, the complaint asks the court to "forthwith appoint a receiver of rents and profits for the premises with the usual powers and duties."  The Debtor answered and engaged in motion practice – nowhere in its papers was there reference to a tenant or a request to add a tenant as an indispensable party.

7.      The judgment of foreclosure and sale was entered on August 9, 2012. The referee set a foreclosure sale for September 14, 2012.

8.      The Debtor filed its Voluntary Chapter 11 Petition in this case the enxt day, September 13, 2012.

9.      Community Bank respectfully submits that this filing was made in bad faith in an effort to frustrate Community Bank's foreclosure.  This case involves a dispute between the Debtor and Community Bank and the taxing authorities.  There are no unsecured creditors.  As noted, Community Bank will be moving separately to dismiss this case pursuant to 12 U.S.C. §1112(b) for cause and in the alternative to lift the automatic stay and to appoint a Chapter 11 Trustee pursuant to 11 U.S.C. §1104.

10. This current motion is directed only at the lease payments that are allegedly being made to the Debtor. A copy of the Assignment of Rents from the Debtors to Community Bank recorded March 4, 2009 is annexed hereto as **Exhibit "C."**

11. There is confusion whether the property is leased. The Bank was repeatedly informed that there was no tenant on the property but rather that it was owned and operated as a restaurant and motel by the Debtor. Representatives of the Debtor repeated this to the appraiser when an appraisal was made of the property for Community Bank in October 2011. The Appraisal Report (p. 10) states: "Subject property is owner occupied per owner representative Mr. Chen. No leases were reported to the Appraisers." (A copy of the Appraisal Report is available from the undersigned on request.)

12. On information and belief, the first notice to the Bank that there was a "tenant" on the property occurred only shortly before the scheduled foreclosure sale when Mr. Li, identifying himself as the tenant, called and said he was surprised by the scheduled foreclosure sale. He reported that he had been paying $10,000.00 per month rent for the previous year.

13. The first written report of any tenancy appears in the Debtor's Schedules. (Exh. A). They state that the property is leased to 1881 Central Buffet, Inc. and that the Debtor intends to assume the unexpired lease (Schedule G). The Debtor states in its Schedule of Business Income and Expenses that it receives $10,000.00 gross monthly income (and has <u>no</u> estimated average future monthly expenses). This $10,000.00 is presumably the rent payment.

14. Likewise, the Debtor's Statement of Financial Affairs, identifies its income as $120,000.00 in 2010, $120,000.00 in 2011 and $90,000.00 in 2012. This implies that the Debtor has leased the property for $10,000.00 per month since the beginning of 2010, contrary to the statements that the Debtor made during that period to Community Bank and the appraiser that the property was not leased.

15. The Debtor now represents that the property is leased. In that case, the rents belong to Community Bank pursuant to the Assignment of Rents and should be sequestered and turned over to Community Bank so that they may be used only to pay Community Bank, or in the alternative to make other appropriate payments such as taxes and maintenance as allowed by the Court. (See, Memorandum of Law annexed hereto). Furthermore, the rent is cash collateral of Community Bank, which the Debtor may not use without consent or authorization of this Court. Community Bank does not consent to the use of its cash collateral by the Debtor, nor has it requested authorization to use cash collateral pursuant to 11 U.S.C. §363(c)(2).

16. Therefore, as required by 11 U.S.C. §363(c)(4), the Debtor as Debor in possession "shall segregate and account for any cash collateral in the Trustee's [D.I.P's] possession, custody or control."

17. In the context of this case, the Debtor's accounting for its rent should extend back to January 2010.

18. The Debtor represented to Community Bank and to the Community Bank appraiser that it was operating the restaurant, which earned "$200,000.00 per month" and the motel, which brought in "a few thousand dollars per year." To the contrary, the Schedules represent that the Debtor has earned $10,000.00 per month since January

4

2010, at total of $330,000.  If these were rent payments, under the Assignment of Rents, these funds should have funded mortgage payments and taxes.  This all needs to be sorted out.

WHEREFORE, Community Bank respectfully requests an Order providing that (1) all rents be sequestered in a separate account, (2) said rents be turned over to Community Bank and applied to its debt, or in the alternative be used only to pay Community Bank's debt and for other purposes specifically approved by the Court in advance, (3) the Debtor is enjoined from dissipating the rents or using them in any way (4) the Debtor must account for its income and expenses since January 1, 2010, and (5) granting such other and further relief as to the Court shall seem just and proper.

Date:  October 8, 2012
       Binghamton, New York                /s/ Harvey D. Mervis      .
                                                    Harvey D. Mervis, Esq.