UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In Re:

1881 Central Avenue, LLC,

Debtor.

Case No.: 12-12394-1-rel
Chapter 11

### AFFIRMATION OF HARVEY D. MERVIS, ESQ. IN SUPPORT OF MOTION TO DISMISS AND FOR ALTERNATIVE RELIEF

Harvey D. Mervis, Esq., duly affirms as follows:

1. I am a partner of the law firm of Hinman, Howard & Kattell, LLP, attorneys for Community Bank, N.A., as successor by merger to Wilber National Bank (hereinafter "Community Bank" or "Bank"), which holds the mortgage on the Debtor's motel and restaurant property, the only asset in this single-asset real estate Chapter 11 case.

2. I submit this Affirmation and the Memorandum of Law filed herewith in support of Community Bank's Motion for (1) an Order from the Court dismissing this case for cause, pursuant to 11 U.S.C. §1112(b); and (2) in the alternative, an Order lifting the automatic stay under 11 U.S.C. §362(d)(1) to allow the foreclosure sale of the property (originally scheduled for the day after the filing of the Petition herein) and (3) in the alternative, an Order pursuant to 11 U.S.C. §1104 appointing a Chapter 11 Trustee.

#### Relevant Facts and Proceedings

3. On or about February 27, 2009, Debtor executed and delivered to Community Bank a Note in the initial principal amount of $1,220,000.00. A copy of the Note is annexed as **Exhibit "A."**

4. To secure said Note, on or about February 27, 2009, Debtor executed, acknowledged and delivered to Community Bank a Mortgage on the Debtor's real

property located at 1881 Central Avenue and 1885 Central Avenue, Albany, New York, recorded in the Albany County Clerk's office on March 4, 2009, a copy of which is annexed as **Exhibit "B."**

5.  The Debtor also gave Community Bank an Assignment of Leases and Rents dated February 27, 2009, and recorded on March 4, 2009, a copy of which is also annexed with Exhibit "B." (Community Bank has made a separate motion for sequestration, turnover and accounting of rents.)

6.  Debtor defaulted under the terms of the Note and Mortgage by failing to make any principal or interest payments due February 2, 2010 and thereafter. No rents have been paid to Community Bank on its Assignment of Rents – the Debtor repeatedly represented that there was no tenant on the property, contrary to the Schedules herein, which state that there is a tenant. (See Exhibit D, below).

7.  By Summons and Complaint dated March 29, 2010, the Bank commenced a foreclosure action regarding 1881 and 1885 Central Avenue.

8.  The Bank obtained an appraisal of 1881 and 1885 Central Avenue. A copy of the report, with the effective date of October 24, 2011, prepared by Bauer Appraisal Group, Inc., is annexed as **Exhibit "C,"** excluding the tax return and income statement of the guarantor.

9.  The property at 1881 Central Ave. (Tax Map No. 29.10-1-14) consists of a 27-unit motel, restaurant and four-bedroom apartment unit (see photos, Exh. C, pp. 40-42). Eight of the motel rooms were renovated in the previous 3-4 years, according to "owner representative Mr. Chen" and "restaurant/motel representative Wendy." The appraiser concluded that the remaining units would also need renovation in order to get

a "consistent rental." (Exh. C, p. 46). According to the appraisal report, "Owner representative, Mr. Chen indicated verbally that the restaurant currently grosses approximately $200,000/month and the motel a few thousand dollars per year." (Appraisal Report, p. 9 and 46).

10. The property at 1885 Central Ave. (Tax Map No. 29.10-1-13) consists of a parking lot (see Exh. C, p. 13).

11. The Appraisal Report states: "Subject property is owner occupied per owner representative Mr. Chen. No leases were reported to the appraisers." (Appraisal, p. 10).

12. The Appraisal Report concluded that the estimated total value of 1881 and 1885 Central Ave. taken together was $1,250,000.00 or $875,000.00 if an immediate liquidation sale were necessary. The appraisal did not break down the value of 1881 Central Ave as opposed to 1885 Central Ave. However, the 2011 "taxable value" is $610,000 for 1881 Central Ave (restaurant and motel) and $373,300 for 1885 Central Ave., (parking lot) indicating that the parking lot contributes nearly 40% to the value of the site as a whole. (See Exh. C., pp. 52-53).

13. During 2010 and 2011, the Debtor, represented by three different attorneys, filed an answer in the foreclosure and engaged in motion practice. The Debtor's motions were denied and the Court, on the Bank's motion, entered a Judgment of Foreclosure and Sale on August 9, 2012 for both 1881 and 1885 Central Avenue. The Judgment fixes the amount owed to the Bank at $1,411,736.25 together with interest at the Note rate of 7.2% from May 3, 2012 to the date of the judgment, plus costs of $1,675 and attorneys' fees of $8,972.50.

## The Bankruptcy Petition and Schedules

14.     The Foreclosure Sale was scheduled for September 14, 2012.

15.     The Debtor filed its Voluntary Chapter 11 Petition and Schedules, copies of which are annexed as **Exhibit "D"** on September 13, 2012, the day before the scheduled sale.

16.     According to the Schedules (Exh. D), Debtor has only two secured creditors: Community Bank, with a claim scheduled as $1,461,000.00 and the Town of Colonie Assessor's Office, with a claim scheduled as $180,000.00.

17.     There are no unsecured claims scheduled.

18.     The Debtor schedules only two assets: the real estate at 1881 Central Avenue, valued at $1,800,000.00, and a checking account with $2,000.00.

19.     The Debtor still owns 1885 Central Avenue, the parking lot. See printouts of Assessment Roll and County Clerk records attached as **Exhibit "E."** However, this property was not scheduled in this case, even though it contributes about 40% of the value of the Debtor's real property.

20.     The Debtor's Schedule G states that its property (i.e., 1881 Central Ave.) is leased to "1881 Central Buffet, Inc., Attn: Eric Li, 1881 Central Avenue, Albany, NY 12205," and that the Debtor intends to assume the lease. The lease is not further described. Among other things, the Debtor does not state whether it covers only the restaurant, or also the motel. The Debtor does not identify the monthly payment, the terms or the lease expiration date. The Debtor does not disclose any of the terms of the lease, such as the responsibility for taxes and insurance. Given that the Debtor schedules *no* monthly expenses, this needs to be explained.

4

21.     The monthly rental income appears to be $10,000.00 per month because the Statement of Business Income and Expenses states that the Debtor's gross monthly income is $10,000 per month. In the Statement of Financial Affairs, the Debtor identifies the "gross amount of income" that it received from the operation of its business as follows:

| Amount | Source |
|---|---|
| $120,000.00 | 2010 |
| $120,000.00 | 2011 |
| $ 90,000.00 | 2012 |

This is income of $10,000 a month, the amount of the reported lease payments. Read as a whole, the Schedules appear to represent that the property has been leased at $10,000.00 per month since January 1, 2010.

22.     This representation is completely contrary to the Debtor's statements to the appraiser in Fall 2011 that there was no lease on the property, that the property was owner-occupied and that the restaurant made $200,000 a month and the motel made a few thousand dollars a year.

23.     The Debtor had also represented to the Bank that there was no tenant. On information and belief, the first notice to the Bank that there was a "tenant" on the property occurred only shortly before the scheduled foreclosure sale when Mr. Li, identifying himself as the tenant, called and said he was surprised by the scheduled foreclosure sale. He reported that he had been paying $10,000.00 per month rent for the previous year.

24. Therefore, the Debtor has made material misrepresentations, either in telling the Bank and its appraiser that there was no tenant, or in claiming on its schedules that there is a tenant.

25. The $10,000 monthly rent is the Bank's cash collateral, based on its Mortgage and Assignment of Rent. The Bank does not consent to the use of cash collateral and there is no cash collateral order. On information and belief, the Debtor is nevertheless using the cash collateral.

26. The Debtor states in the Chapter 11 Statement of Intentions that it intends to retain 1881 Central Avenue. Despite the instruction on the form that at least one choice must be identified, it has not stated whether it intends to (1) redeem the property, (2) reaffirm the debt or (3) "other."

## Dismissed for Cause

27. Community Bank respectfully submits that this filing, made on the eve of the foreclosure sale is not in good faith and should be dismissed pursuant to 11 U.S.C. §1112.

28. As set forth above, the Debtor is using cash collateral without authorization, substantially harming Community Bank, which is under secured. This constitutes cause for dismissal under 11 U.S.C. §1104(b)(4)(D).

29. In addition, t is respectfully submitted that there is no realistic chance of reorganization. The mortgage debt alone is $9,606.18 (Exh. A., p.1), and the Debtor's report income of only $10,000.00 per month, which is not available to the Debtor for general use but must be applied to the Community Bank debt. (See motion for sequestration of rents.)

30. The appraisal shows that 1881 and 1885 Central Avenue together are appraised at $1,250,000.00. The mortgage arrears are $1,461,000.00 and taxes of $180,000.00 are owed to the Town of Colonie. There is no support for the Debtor's contention that 1881 Central Avenue alone is worth $1.8 million.

31. This case presents the factors indicative of a bad faith filing. The Debtor has only one asset, which is in foreclosure because of default in payment. The filing was timed to frustrate the foreclosure sale. The Debtor's financial condition is essentially a two-party dispute with Community Bank, which can and should be resolved in the state court foreclosure action. There are no unsecured creditors, and the tax liability will be addressed in the foreclosure sale. The Debtor has no employees (Exh. D, Schedule of Business Income and Expenses). See Memorandum of Law; In re C-TC 9th Ave. Ptnrship, 113 F.3d 1304 (2d Cir. 1997).

32. The defects in the petition and schedule themselves also show lack of good faith in the filing. Defects include the following:

   a. The Debtor did not schedule the parking lot at 1885 Central Avenue as an asset of the Estate even though it contributes some 40% to the value of the Debtor's property.

   b. The Debtor indicates that 1881 Central Ave. has been leased since January 2010, despite representations to the Bank and Appraiser that it was not leased during that time frame.

   c. The Debtor schedules its income at $10,000 a month since January, 2010, contrary to Mr. Chen's statement to the appraiser in October 2011, that

7

there was no lease on the property and that the restaurant grossed $200,000.00 per month, a number which itself does not appear credible.

d. The Debtor Schedules no expenses.

e. The Debtor did not disclose the existence of the motel on the property or report any income from the motel, contrary to Mr. Chen's statement to the appraiser in October 2011 that it made a "few thousand dollars a year." It is unknown whether the motel is a legitimate motel business or whether it has another use, for instance, housing restaurant employees.

### Order Lifting the Automatic Stay

33. In the alternative, if the case is not dismissed, Community Bank respectfully requests an Order lifting the automatic stay pursuant to 11 U.S.C. §362(d)(2).

34. The Debtor offers no support for its claim that 1881 Central Ave. *alone* is worth $1,800,000. Community Bank, however, submits an appraisal herewith (Exh. C), showing an valuation of $1,250,000 for *both* 1881 Central Ave and 1885 Central Ave. This shows the Debtor lacks equity in its property, given scheduled debt of $1,641,000.

35. Since this is a single asset real estate case, the property is obviously necessary to an effective reorganization. However, the Debtor has the burden to show that there is a prospect of an effective reorganization. Even though the Debtor is within the exclusivity period to propose a plan, it still mush establish a "realistic chance or 'plausability' for reorganization." In re MHS Management Group, 2009 Bankr. LEXIS 3580, *15 (Bankr. N.D.N.Y. October 26, 2009). Community Bank respectfully submits that the Debtor cannot make even this showing and that there is no reason for the

foreclosure proceeding to be stayed here when it has already dragged on for some two years.

## Appointment of §1104 Trustee

36. It is also respectfully submitted that given the Debtor's presumed unauthorized use of cash collateral, and its dishonesty in its Schedules and given that no payments have been made on the taxes and mortgage, and given that the Debtor appears to have hidden the existence of the lease, preventing the Bank from exercising its rights under the Assignment of Rents, and as set forth above, the Court should exercise its discretion to appoint a Trustee under 11 U.S.C. §1104.

WHEREFORE In virtue of the above, Community Bank seeks the following relief:

a. Dismissal of this case for cause pursuant to 11 U.S.C §1112(b);

b. In the alternative, an Order lifting the automatic stay under 11 U.S.C. §362(d) so that the foreclosure sale may continue;

c. In the alternative, an Order pursuant to 11 U.S.C. §1104 appointing Chapter 11 Trustee; and

d. Such other and further relief as the Court shall find just and proper.

Dated: October 11, 2012
Binghamton, New York

Respectfully submitted,

/s/ Harvey D. Mervis
Harvey D. Mervis, Esq.
HINMAN, HOWARD & KATTELL, LLP
Attorneys for Community Bank
Office and Post Office Address
80 Exchange Street
P.O. Box 5250
Binghamton, New York 13902-5250
Telephone: (607) 723-5341