# EXHIBIT "B"

# Albany County Clerk
## 32 North Russell Rd.
## Albany, NY 12206-1324

**Return to:**

HINMAN HOWARD & KATTELL
700 SECURITY MUTUAL BLDG
80 EXCHANGE ST
BINGHAMTON NY 13902-5250

| | |
|---|---|
| **Instrument** | **Mortgage** |

**Document Number:** 10365297    Book: 5804  Page: 47  Annual Code: CZ    Increment: 10246

**Mortgagor**

1881 CENTRAL AVENUE LLC

**Mortgagee**

WILBER NATIONAL BANK

| | |
|---|---|
| **Number of Pages:** | 19 |
| **Amount** | $1220000.00 |
| **Recorded Date/Time** | 03/04/2009 at 2:56 PM |
| **Receipt Number** | 504240 |

Mortgage Tax Receipt
Albany County Clerk Received:
Tax # CZ 10246
Basic Tax.........$6100.00
Additional Tax.........$3050.00
Special Additional Tax.........$3050.00
County Tax.........$3050.00

**Note:** ** DO NOT REMOVE - THIS PAGE IS PART OF THE DOCUMENT **

THIS PAGE CONSTITUTES THE CLERK'S ENDORSEMENT, REQUIRED BY SECTION 316-a(5) &

319 OF THE REAL PROPERTY LAW OF THE STATE OF NEW YORK.

Thomas G. Clingan, County Clerk



Albany County Clerk
Mortgage Books (Record Room)
Book 5804 Page 48

Loan Number: 1042475

# MORTGAGE

THIS MORTGAGE (herein "Instrument") is made this 27th day of February, 2009, between the Mortgagor, 1881 CENTRAL AVENUE LLC, whose address is 1881 Central Avenue, Albany, New York   12205 (herein "Borrower"), and the Mortgagee, WILBER NATIONAL BANK, a national banking association, whose address is 245 Main Street, Oneonta, New York (herein "Lender").

WHEREAS, Borrower is indebted to Lender in the principal sum of $1,220,000.00, which indebtedness is evidenced by Borrower's note dated the same date as this Mortgage (herein "Note").

TO SECURE TO LENDER (a) the repayment of the indebtedness evidenced by the Note with interest thereon, and all renewals, extensions and modifications thereof; (b) the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Instrument; and (c) the performance of the covenants and agreements of Borrower herein contained; and Borrower does hereby mortgage, grant, convey and assign to Lender the following described property:

See annexed Schedule "A".

This mortgage secures a note which provides for the payment of varying rates of interest.

TOGETHER with all buildings, improvements, and tenements now or hereafter erected on the property, and all heretofore or hereafter vacated alleys and streets abutting the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water, water rights, and water stock appurtenant to the property, and all fixtures, machinery, equipment, engines, boilers, incinerators, building materials, appliances and goods of every nature whatsoever now or hereafter located in, or on, or used, or intended to be used in connection with the property, including, but not limited to, those for the purpose of supplying or distributing heating, cooling, electricity, gas, water, air and light; and all elevators, and related machinery and equipment, fire prevention and extinguishing apparatus, security and access control apparatus and plumbing; all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the real property covered by this Instrument; and all of the foregoing, together with said property (or the leasehold estate in the event this Instrument is on a leasehold) are herein referred to as the "Property".

It is stipulated that the maximum indebtedness secured by this mortgage at execution, or which under any contingency may be secured thereby at any time in the future, shall be the principal amount hereof as stated, together with accrued interest thereon.

Albany County Clerk
Document Number 10365297
Rcvd 03/04/2009 2:56:47 PM



A- 0118075

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant, convey and assign the Property (and, if this Instrument is on a leasehold, that the ground lease is in full force and effect without modification except as noted above and without default on the part of either lessor or lessee thereunder), that the Property is unencumbered, and that Borrower will warrant and defend generally the title to the Property against all claims and demands, subject to any easements and restrictions listed in a schedule of exceptions to coverage in any title insurance policy insuring Lender's interest in the Property.

Borrower and Lender covenant and agree as follows:

1.    Payment of Principal and Interest.  Borrower shall promptly pay when due the principal of and interest on the indebtedness evidenced by the Note, any prepayment and late charges provided in the Note and all other sums secured by this Instrument.  All the covenants, conditions and agreements contained in (a) the Note, and (b) all and any of the documents other than the Note or this Mortgage now or hereafter executed by the Borrower and/or others and by or in favor of Lender in connection with the creation of Borrower's obligations, the payment of any other sums owed by Borrower to Lender or the performance of any of Borrower's obligations (the "Loan Documents"), are hereby made a part of this Mortgage to the same extent and with the same force as if fully set forth herein.  The term "Loan Documents" as used herein shall individually and collectively refer to the Note, this Mortgage and the Other Loan Documents.

2.    Funds for Taxes, Insurance and Other Charges.  Subject to applicable law and at the demand of Lender, Borrower shall pay to Lender on the day monthly installments of principal or interest are payable under the Note (or on another day designated in writing by Lender), until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of (a) the yearly water and sewer rates and taxes and assessments which may be levied on the Property, (b) the yearly ground rents, if any, (c) the yearly premium installments for fire and other hazard insurance, rent loss insurance and such other insurance covering the Property as Lender may require pursuant to paragraph 5 hereof, (d) the yearly premium installments for mortgage insurance, if any, and (e) if this Instrument is on a leasehold, the yearly fixed rents, if any, under the ground lease, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof.  Any waiver by Lender of a requirement that Borrower pay such Funds may be revoked by Lender, in Lender's sole discretion, at any time upon notice in writing to Borrower.  Lender may require Borrower to pay to Lender, in advance, such other Funds for other taxes, charges, premiums, assessments and impositions in connection with Borrower or the Property which Lender shall reasonably deem necessary to protect Lender's interests (herein "Other Impositions").  Unless otherwise provided by applicable law, Lender may require Funds for Other Impositions to be paid by Borrower in a lump sum or in periodic installments, at Lender's option.

The Funds shall be held in trust by Lender in a non-interest bearing account. Lender shall apply the Funds to pay said rates, rents, taxes, assessments, insurance

premiums and Other Impositions so long as Borrower is not in breach of any covenant or agreement of Borrower in this Instrument. Lender shall make no charge for so holding and applying the Funds, analyzing said account or for verifying and compiling said assessments and bills, unless Lender pays Borrower interest, earnings or profits on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Instrument that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires interest, earnings or profits to be paid, Lender shall not be required to pay Borrower any interest, earnings or profits on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds in Lender's normal format showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Instrument.

If at any time the amount of the Funds held by Lender shall be less than the amount deemed necessary by Lender to pay water and sewer rates, taxes assessments, insurance premiums, rents and Other Impositions, as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency within thirty (30) days after notice from Lender to Borrower requesting payment thereof.

Upon Borrower's breach of any covenant or agreement of Borrower in this Instrument, Lender may apply, in any amount and in any order as Lender shall determine in Lender's sole discretion, any Funds held by Lender at the time of application (i) to pay rates, rents, taxes, assessments, insurance premiums and Other Impositions which are now or will hereafter become due, or (ii) as a credit against sums secured by this Instrument. Upon payment in full of all sums secured by this Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

3.    Application of Payments. Unless applicable law provides otherwise, all payments received by Lender from Borrower under the Note or this Instrument shall be applied by Lender in the following order of priority: (a) interest payable on the Note; (b) principal of the Note; (c) interest payable on advances made pursuant to paragraph 8 hereof; (d)principal of advances made pursuant to paragraph 8 hereof; (e) amount payable to Lender by Borrower under paragraph 2 hereof; and (f) any other sums secured by this Instrument in such order as Lender, at Lender's option, may determine; provided, however, that Lender may, at Lender's option, apply any sums payable pursuant to paragraph 8 hereof prior to interest on and principal of the Note, but such application shall not otherwise affect the order of priority of application specified in this paragraph 3.

4.    Charges; Liens. Borrower shall pay all water and sewer rates, rents, taxes, assessments, premiums, and Other Impositions attributable to the Property at Lender's option in the manner provided under paragraph 2 hereof or, if not paid in such manner, by Borrower making payment, when due, directly to the payee thereof, or in such other manner as Lender may designate in writing. Borrower shall promptly furnish to Lender all notices of amounts due under this paragraph 4, and in the event Borrower shall make payment directly, Borrower shall promptly furnish to Lender receipts

evidencing such payments. Borrower shall promptly discharge any lien which has, or may have, priority over or equality with, the lien of this Instrument, and Borrower shall pay, when due, the claims of all persons supplying labor or materials to or in connection with the Property. Without Lender's prior written permission, Borrower shall not allow any lien inferior to this Instrument to be perfected against the Property.

5.    Hazard Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured by carriers at all time satisfactory to Lender against loss by fire, hazards included within the term "extended coverage", rent loss and such other hazards, casualties, liabilities and contingencies as Lender (and, if this Instrument is on a leasehold, the ground lessee) shall require and in such amounts and for such periods as Lender shall require. All premiums on insurance policies shall be paid, at Lender's option, in the manner provided under paragraph 2 hereof, or by Borrower making payment, when due, directly to the carrier, or in such other manner as Lender may designate in writing.

All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in form acceptable to Lender. Lender shall have the right to hold the policies, and Borrower shall promptly furnish to Lender all renewal notices and all receipts of paid premiums. At least thirty (30) days prior to the expiration date of a policy, Borrower shall deliver to Lender a renewal policy in form satisfactory to Lender. If this Instrument is on the leasehold, Borrower shall furnish Lender a duplicate of all policies, renewal notices, renewal policies and receipts of paid premiums if, by virtue of the ground lease, the originals thereof may not be supplied by Borrower to Lender.

In the event of loss, Borrower shall give immediate written notice to the insurance carrier and to Lender. Borrower hereby authorizes and empowers Lender as attorney-in-fact for Borrower to make proof of loss, to adjust and compromise any claim under insurance policies, to appear in and prosecute any action arising from such insurance policies, to collect and receive insurance proceeds, and to deduct therefrom Lender's expenses incurred in the collection of such proceeds; provided however, that nothing contained in this paragraph 5 shall require Lender to incur any expense or take any action hereunder. Borrower further authorizes Lender, at Lender's option, (a) to hold the balance of such proceeds to be used to reimburse Borrower for the cost of reconstruction or repair of the Property or (b) to apply the balance of such proceeds to the payment of the sums secured by this Instrument, whether or not then due, in the order of application set forth in paragraph 3 hereof.

If the insurance proceeds are held by Lender to reimburse Borrower for the cost of restoration and repair of the Property, the Property shall be restored to the equivalent of its original condition or such other condition as Lender may approve in writing. Lender may, at Lender's option, condition disbursement of said proceeds on Lender's approval of such plans and specifications of an architect satisfactory to Lender, contractor's cost estimates, architect's certificates, waivers of liens, sworn statements of mechanics and materialmen and such other evidence of costs, percentage completion of construction, application of payments, and satisfaction of liens as Lender may

reasonably require. If the insurance proceeds are applied to the payment of the sums secured by this Instrument, any such application of proceeds to principal shall not extend or postpone the due dates of the monthly installments referred to in paragraphs 1 and 2 hereof or change the amounts of such installments. If the Property is sold pursuant to paragraph 28 or 29 hereof or if Lender acquires title to the Property, Lender shall have all of the right, title and interest of Borrower in and to any insurance policies and unearned premiums thereon and in and to the proceeds resulting from any damage to the Property prior to such sale or acquisition.

6.    Preservation and Maintenance of Property. Borrower (a) shall not commit waste or permit impairment or deterioration of the Property, (b) shall not abandon the Property, (c) shall restore or repair promptly and in a good and workmanlike manner all or any part of the Property to the equivalent of its original condition, or such other condition as Lender may approve in writing, in the event of any damage, injury or loss thereto, whether or not insurance proceeds are available to cover in whole or in part the costs of such restoration or repair, (d) shall keep the Property, including improvements, fixtures, equipment, machinery and appliances thereon in good repair and shall replace fixtures, equipment, machinery and appliances on the Property when necessary to keep such items in good repair, (e) shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property, (f) shall generally operate and maintain the Property in a manner to ensure maximum rentals, and (g) shall give notice in writing to Lender of and, unless otherwise directed in writing by Lender, appear in and defend any action or proceeding purporting to affect the Property, the security of this Instrument or the rights or powers of Lender. Neither Borrower nor any tenant or other person shall remove, demolish or alter any improvement now existing or hereafter erected on the Property or any fixture, equipment, machinery or appliance in or on the Property except when incident to the replacement of fixtures, equipment, machinery and appliances with items of like kind.

7.    Use of Property and Right of Lender to Inspect. Unless required by law or unless Lender has otherwise agreed in writing, Borrower shall not allow changes in the use for which all or any part of the Property was intended at the time this Instrument was executed. Borrower shall not initiate or acquiesce in a change in the zoning classification of the Property without Lender's prior written consent.

Lender may make or cause to be made reasonable entries upon and inspections of the Property.

8.    Protection of Lender's Security. If Borrower fails to perform the covenants and agreements contained in this Instrument, or if any action or proceeding is commenced which affects the Property or title thereto or the interest of Lender therein, including, but not limited to, eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decedent, or any action at law or in equity against Borrower by Lender to enforce Lender's rights hereunder, then Lender at Lender's option may make such appearances, disburse such sums and take such action as Lender deems necessary, in its sole discretion, to protect Lender's interest, including, but not limited to, (a) disbursement of attorney's fees, (b) entry upon the

Property to make repairs, (c) procurement of satisfactory insurance as provided in paragraph 5 hereof, and (d) if this Instrument is on a leasehold, exercise of any option to renew or extend the ground lease on behalf of Borrower and the curing of any default of Borrower in the terms and conditions of the ground lease.

Any amounts disbursed by Lender pursuant to this paragraph 8, with interest thereon, shall become additional indebtedness of Borrower secured by this Instrument. Unless Borrower and Lender agree to other terms of payment, such amounts shall be immediately due and payable and shall bear interest from the date of disbursement at the rate stated in the Note unless collection from Borrower of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate which may be collected from Borrower under applicable law. Borrower hereby covenants and agrees that Lender shall be subrogated to the lien of any mortgage or other lien discharged, in whole or in part, by the indebtedness secured hereby. Nothing contained in this paragraph 8 shall require Lender to incur any expense or take any action hereunder.

9.    Hazardous Materials. Borrower represents and warrants that, to the best of Borrower's knowledge, after due inquiry and investigation, the Property is not now and has never been used to generate, manufacture, refine, transport, treat, store, handle, dispose, transfer, produce, process or in any manner deal with, Hazardous Materials, and that no Hazardous Materials have ever been installed, placed, or in any manner dealt with on the Property, and that no owner of the Property or any tenant, subtenant, occupant, prior tenant, prior subtenant, prior occupant or person (collectively, "Occupant") has received any notice or advice from any governmental agency or any Occupant with regard to Hazardous Materials on, from or affecting the Property. Borrower covenants that the Property shall be kept free of Hazardous Materials, and shall not be used to generate, manufacture, refine, transport, treat, store, handle, dispose, transfer, produce, process or in any manner deal with, Hazardous Materials, and Borrower shall not cause or permit, as a result of any intentional or unintentional act or omission on the part of Borrower or any Occupant, the installation or placement of Hazardous Materials in or on the Property or a release of Hazardous Materials onto the Property or onto any other property or suffer the presence of Hazardous Materials on the Property. Borrower shall comply with, and ensure compliance by all Occupants with, all applicable federal, state and local laws, ordinances, rules or regulations, with respect to Hazardous Materials, and shall keep the Property free and clear of any liens imposed pursuant to such laws, ordinances, rules or regulations. In the event that Borrower receives any notice or advice from any governmental agency, or any Occupant with regard to Hazardous Materials on, from or affecting the Property, Borrower shall immediately notify Lender. Borrower shall conduct and complete all investigations, studies, sampling, and testing, and all remedial, removal, and other actions necessary to clean up and remove all Hazardous Materials, On, from or affecting the Property in accordance with all applicable federal, state, and local laws, ordinances, rules, regulations, and policies. Borrower shall defend, indemnify, and hold harmless Lender, its employees, agents, officers and directors from and against any claims, demands, penalties, fines, liabilities, settlements, damages, costs or expenses of whatever kind or nature known or unknown, contingent or otherwise, arising out of in

any way related to Hazardous Materials at or affecting the Property or the soil, water, vegetation, buildings, personal property, persons, animals or otherwise and any personal injury (including wrongful death) or property damage arising out of or related to such Hazardous Materials. The term "Hazardous Materials" as used in this Mortgage shall include, without limitation, gasoline, petroleum products, explosives, radioactive materials, hazardous materials, hazardous wastes, hazardous or toxic substances, polychlorinated biphenyls or related or similar materials, asbestos or any material containing asbestos, or any other substance or material as may be defined as a hazardous or toxic substance by any Federal, state or local environmental law, ordinance, rule, or regulation including, without limitation, the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended (42 U.S.C. Sections 9601, et seq.), the Hazardous Materials Transportation Act, as amended (49 U.S.C. Sections 1801, et seq.), the Resource Conservation and Recovery Act, as amended (42 U.S.C. Sections 6901 et seq.), the Federal Water Pollution Control Act (33 U.S.C. Sections 1251 et seq.), the Clean Air Act (42 U.S.C. Sections 7401 et seq.) and in the regulations adopted and publications promulgated pursuant thereto. The obligations and liabilities of Borrower under this paragraph shall survive the foreclosure of this Mortgage or the delivery of a deed in lieu of foreclosure, and shall continue to be binding upon Borrower notwithstanding any contrary language contained in this Mortgage or any other document, specifically including without limitation any document which otherwise relieves Borrower from personal liability under the note secured by this Mortgage, this Mortgage or any other document.

10.    Books and Records.  Borrower shall keep and maintain at all times at Borrower's address stated above, or such other place as Lender may approve in writing, complete and accurate books of accounts and records adequate to reflect correctly the results of the operation of the Property and copies of all written contracts, leases and other instruments which affect the Property.  Such books, records, contracts, leases and other instruments shall be subject to examination and inspection at any reasonable time by Lender.  Borrower shall provide the Lender with the following information during the term of the Note:

1.    Within 120 days after the end of each fiscal year of Borrower and Zhen & Chen Jumbo Corp.:

  a.    Review quality financial statements, as prepared by Certified Public Accountant.

2.    Upon the sooner of 120 days after the end of each calendar/fiscal year or within 30 days after filing each year:

  a.    The complete Federal income tax returns of Wensong Chen and Juanying Zheng (including all statements and schedules), as signed by them and filed with the IRS.

3.    From time to time, any such other financial information with respect to the Borrower and/or Guarantor, as the Lender may request.

Borrower shall furnish, together with the foregoing financial statements and at any other time upon Lender's request, a rent schedule for the Property, certified by Borrower, showing the name of each tenant, and for each tenant, the space occupied, the lease expiration date, the rent payable and the rent paid.

11.    Condemnation. Borrower shall promptly notify Lender of any action or proceeding relating to any condemnation or other taking, whether direct or indirect, of the Property, or part thereof, and Borrower shall appear in and prosecute any such action or proceeding unless otherwise directed by Lender in writing. Borrower authorizes Lender, at Lender's option, as attorney-in-fact for Borrower, to commence, appear in and prosecute, in Lender's or Borrower's name, any action or proceeding relating to any condemnation or other taking of the Property, whether direct or indirect, and to settle or compromise any claim in connection with such condemnation or other taking. The proceeds of any award, payment or claim for damages, direct or consequential, in connection with any condemnation or other taking, whether direct or indirect, of the Property, or part thereof, or for conveyances in lieu of condemnation, are hereby assigned to and shall be paid to Lender subject, if this Instrument is on a leasehold, to the rights of lessor under the ground lease.

Borrower authorizes Lender to apply such awards, payments, proceeds or damages, after the deduction of Lender's expenses incurred in the collection of such amounts, at Lender's option, to restoration or repair of the Property or to payment of the sums secured by this Instrument, whether or not then due, in the order of application set forth in paragraph 3 hereof, with the balance, if any, to Borrower. Unless Borrower and Lender otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly installments referred to in paragraphs 1 and 2 hereof or change the amount of such installments. Borrower agrees to execute such further evidence of assignment of any awards, proceeds, damages or claims arising in connection with such condemnation or taking as Lender may require.

12.    Borrower and Lien Not Released. From time to time, Lender may, at Lender's option, without giving notice or obtaining the consent of Borrower (except as hereinafter provided in this paragraph), Borrower's successors or assigns or of any junior lienholder or guarantors, without liability on Lender's part and notwithstanding Borrower's breach of any covenant or agreement of Borrower in this Instrument, extend the time for payment of said indebtedness or any part thereof, reduce the payments thereon, release anyone liable on any of said indebtedness, accept a renewal note or notes therefor, modify the terms and time of payment of said indebtedness, release from the lien of this Instrument any part of the Property, take or release other or additional security, reconvey any part of the Property, consent to any map or plan of the Property, consent to the granting of any easement, join in any extension or subordination agreement, and agree in writing with Borrower to modify the rate of interest or period of amortization of the Note or change the amount of the monthly installments payable thereunder. Any actions taken by Lender pursuant to the terms of this paragraph 12 shall not affect the obligation of Borrower or Borrower's successors or assigns to pay the sums secured by this Instrument and to observe the covenants of Borrower contained herein, shall not affect the guaranty of any person, corporation,

partnership or other entity for payment of the indebtedness secured hereby, and shall not affect the lien or priority of lien hereof on the Property. Borrower shall pay Lender a reasonable service charge, together with such title insurance premiums and attorney's fees as may be incurred at Lender's option, for any such action if taken at Borrower's request.

13.    <u>Forbearance By Lender Not A Waiver</u>. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any right or remedy. The acceptance by Lender of payment of any sum secured by this Instrument after the due date of such payment shall not be a waiver of Lender's right to either require prompt payment when due of all other sums so secured or to declare a default for failure to make prompt payment. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Instrument, nor shall Lender's receipt of any awards, proceeds or damages under paragraphs 5 and 11 hereof operate to cure or waive Borrower's default in payment of sums secured by this Instrument.

14.    <u>Estoppel Certificate</u>. Borrower shall within ten (10) days of a written request from Lender furnish Lender with a written statement, duly acknowledged, setting forth the sums secured by this Instrument and any right of set-off, counterclaim or other defense which exists against such sums and the obligations of this Instrument.

15.    <u>Uniform Commercial Code Security Agreement</u>. This Instrument is intended to be a security agreement pursuant to the Uniform Commercial Code for any of the items specified above as part of the Property which, under applicable law, may be subject to a security interest pursuant to the Uniform Commercial Code, and Borrower hereby grants Lender a security interest in said items. Borrower agrees that Lender may file this Instrument, or a reproduction thereof, in the real estate records or other appropriate index, as a financing statement for any of the items specified above as part of the Property. Any reproduction of this Instrument or of any other security agreement or financing statement shall be sufficient as a financing statement. In addition, Borrower agrees to execute and deliver to Lender, upon Lender's request, any financing statements, as well as extensions, renewals and amendments thereof, and reproductions of this Instrument in such form as Lender may require to perfect a security interest with respect to said items. Borrower further authorizes Lender to execute and file any such financing statements or continuations without Borrower's signature. Borrower shall pay all costs of filing such financing statements and any extensions, renewals, amendments and releases thereof, and shall pay all reasonable costs and expenses of any record searches for financing statements Lender may reasonably require. Without the prior written consent of Lender, Borrower shall not create or suffer to be created pursuant to the Uniform Commercial Code any other security interest in said items, including replacements and additions thereto. Upon Borrower's breach of any covenant or agreement of Borrower contained in this Instrument, including the covenants to pay when due all sums secured by this Instrument, Lender shall have the remedies of a secured party under the Uniform Commercial Code and, at Lender's option, may also invoke the remedies provided in

paragraph 28 or 29 of this Instrument as to such items. In exercising any of said remedies, Lender may proceed against the items of real property and any items of personal property specified above as part of the Property separately or together and in any order whatsoever, without in any way affecting the availability of Lender's remedies under the Uniform Commercial Code or of the remedies provided in paragraph 28 or 29 of this Instrument.

16.    Leases of the Property. Borrower shall comply with and observe Borrower's obligations as landlord under all leases of the Property or any part thereof. Borrower, at Lender's request, shall furnish Lender with executed copies of all leases now existing or hereafter made of all or any part of the Property, and all leases now or hereafter entered into will be in form and substance subject to the approval of Lender. All leases of the Property shall specifically provide that such leases are subordinate to this Instrument; that the tenant attorns to Lender, such attornment to be effective upon Lender's acquisition of title to the Property; that the tenant agrees to execute such further evidences of attornment as Lender may from time to time request, that the attornment of the tenant shall not be terminated by foreclosure; and that Lender may, at Lender's option, accept or reject such attornments. Borrower shall not, without Lender's written consent, execute, modify, surrender or terminate, either orally or in writing, any lease now existing or hereafter made of all or any part of the Property permit an assignment or sublease of such a lease without Lender's written consent, or request or consent to the subordination of any lease of all or any part of the Property to any lien subordinate to this Instrument. If Borrower becomes aware that any tenant proposes to do, or is doing, any act or thing which may give rise to any right of set-off against rent, Borrower shall (a) take such steps as shall be reasonably calculated to prevent the accrual of any right to a set-off against rent, (b) notify Lender thereof and of the amount of said set-offs, and (c) within ten (10) days after such accrual, reimburse the tenant who shall have acquired such right to set-off or take such other steps as shall effectively discharge such set-off and as shall assure that rents thereafter due shall continue to be payable without set-off or deduction.

Upon Lender's request, Borrower shall assign to Lender, by written instrument satisfactory to Lender, all leases now existing or hereafter made of all or any part of the Property and all security deposits made by tenants in connection with such leases of the Property. Upon assignment by Borrower to Lender of any leases of the Property, Lender shall have all of the rights and powers possessed by Borrower prior to such assignment and Lender shall have the right to modify, extend or terminate such existing leases and to execute new leases, in Lender's sole discretion.

17.    Remedies Cumulative. Each remedy provided in this Instrument is distinct and cumulative to all other rights or remedies under this Instrument or afforded by law or equity, and may be exercised concurrently, independently, or successively, in any order whatsoever.

18.    Acceleration in Case of Borrower's Insolvency. If Borrower shall voluntarily file a petition under the Federal Bankruptcy Act, as such Act may from time to time be amended, or under any similar or successor Federal statute relating to

bankruptcy, insolvency, arrangements or reorganizations, or under any state bankruptcy or insolvency act, or file an answer in an involuntary proceeding admitting insolvency or inability to pay debts, or if Borrower shall fail to obtain a vacation or stay of involuntary proceedings brought for the reorganization, dissolution or liquidation of Borrower, or if Borrower shall be adjudged a bankrupt, or if a trustee or receiver shall be appointed for Borrower or Borrower's property, or if the Property shall become subject to the jurisdiction of a Federal bankruptcy court or similar state court, or if Borrower shall make an assignment for the benefit of Borrower's creditors, or if there is an attachment, execution or other judicial seizure of any portion of Borrower's assets and such seizure is not discharged within ten days, then Lender may, at Lender's option, declare all of the sums secured by this Instrument to be immediately due and payable without prior notice to Borrower, and Lender may invoke any remedies permitted by paragraph 28 or 29 of this Instrument. Any attorney's fees and other expenses incurred by Lender in connection with Borrower's bankruptcy or any of the other aforesaid events shall be additional indebtedness of Borrower secured by this Instrument pursuant to paragraph 8 hereof.

19.     Transfers of the Property or Beneficial Interests in Borrower; Assumption. On sale or transfer of (a) all or any part of the Property, or any legal or equitable interest therein, whether voluntary or involuntary, or (b) beneficial interests in Borrower (if Borrower is not a natural person or persons but is a corporation, partnership, trust, limited liability corporation or partnership or other legal entity), Lender may, at Lender's option, declare all of the sums secured by this Instrument to be immediately due and payable, and Lender may invoke any remedies permitted by paragraph 28 or 29 of this Instrument.

20.     Notice. Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Instrument or in the Note shall be given by mailing such notice by certified mail addressed to Borrower at Borrower's address stated above or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail, return receipt requested, to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Instrument or in the Note shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

21.     Successors and Assigns Bound; Joint and Several Liability; Agents; Captions. The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 19 hereof. All covenants and agreements of Borrower shall be joint and several. In exercising any rights hereunder or taking any actions provided for herein, Lender may act through its employees, agents or independent contractors as authorized by Lender. The captions and headings of the paragraphs of this Instrument are for convenience only and are not to be used to interpret or define the provisions hereof.

22.    Governing Law; Severability. This Instrument shall be governed by the law of the State of New York. In the event that any provision of this Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Instrument or the Note which can be given effect without the conflicting provisions, and to this end the provisions of this Instrument and the Note are declared to be severable. In the event that any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower is interpreted so that any charge provided for in this Instrument or in the Note, whether considered separately or together with other charges levied in connection with this Instrument and the Note, violates such law, and Borrower is entitled to the benefit of such law, such charge is hereby reduced to the extend necessary to eliminate such violation. The amounts, if any, previously paid to Lender in excess of the amounts payable to Lender pursuant to such charges as reduced shall be applied by Lender to reduce the principal of the indebtedness evidenced by the Note. For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all indebtedness which is secured by this Instrument or evidenced by the Note and which constitutes interest, as well as all other charges levied in connection with such indebtedness which constitute interest, shall be deemed to be allocated and spread over the stated term of the Note. Unless otherwise required by applicable law, such allocation and spreading shall be effected in such a manner that the rate of interest computed thereby is uniform throughout the stated term of the Note.

23.    Waiver of Statute of Limitations. Borrower hereby waives the right to assert any statute of limitations as a bar to the enforcement of the lien of this Instrument or to any action brought to enforce the Note or any other obligation secured by this Instrument.

24.    Waiver of Marshalling. Notwithstanding the existence of any other security interests in the Property held by Lender or by any other party, Lender shall have the right to determine the order in which any or all of the Property shall be subjected to the remedies provided herein. Lender shall have the right to determine the order in which any or all portions of the indebtedness secured hereby are satisfied from the proceeds realized upon the exercise of the remedies provided herein. Borrower, any party who consents to this Instrument and any party who now or hereafter acquires a security interest in the Property and who has actual or constructive notice hereof hereby waives any and all right to require the marshalling of assets in connection with the exercise of the remedies permitted by applicable law or provided herein.

25.    Construction Loan Provisions. INTENTIONALLY OMITTED.

26.    Appointment of Receiver; Lender in Possession. Lender, in any action to foreclose this mortgage, shall be entitled, without notice and without regard to adequacy of any security of the debt, to the appointment of a receiver of the rents and profits of the premises covered by the mortgage.

Upon Borrower's breach of any covenant or agreement of Borrower in this Instrument, Lender may in person, by agent or by a court-appointed receiver, regardless

of the adequacy of Lender's security, enter upon and take and maintain full control of the Property in order to perform all acts necessary and appropriate for the operation and maintenance thereof including, but not limited to, the execution, cancellation or modification of leases, the collection of all rents and revenues of the Property, the making of repairs to the Property and the execution or termination of contracts providing for the management or maintenance of the Property, all on such terms as are deemed best to protect the security of this Instrument. In the event Lender elects to seek the appointment of a receiver for the Property upon Borrower's breach of any covenant or agreement of Borrower in this Instrument, Borrower hereby expressly consents to the appointment of such receiver. Lender or the receiver shall be entitled to receive a reasonable fee for so managing the Property.

27.    <u>Assignment of Rents</u>. The Borrower hereby assigns to the Lender the rents, issues and profits of the premises as further security for the payment of said indebtedness. The Borrower covenants that up to the date of this assignment, the Borrower has faithfully performed and fulfilled all covenants under any lease and will continue to do so during the term of the lease, so long as said mortgage shall be in effect, and will not by the Borrower's own failure or fault at any time during the term of said lease give any lessee just cause to terminate any lease. The Borrower further covenants that there is no other assignment of Borrower's interest in any lease in effect, that no substantial modification whatever of any such lease has been executed or granted, either orally or in writing, that no tenant is in default under any lease, and that the leases are in full force and effect according to their original terms.

Pursuant to Section 291-f of the Real Property Law, the Borrower covenants and agrees that so long as said mortgage shall be unpaid, the Borrower will not, without consent of the Lender:

(a)    Cancel or accept surrender of any lease or any renewal or extension thereof;

(b)    Reduce the rent or modify the terms of any lease or any renewals or extensions thereof, either orally or in writing, so as to decrease the terms thereof or in any way substantially reduce the value of the property or the equity of the Lender therein;

(c)    Consent to an assignment of any lessee's interest in any lease which will relieve any lessee of liability for the payment of rent and the performance of the terms and conditions of the lease;

(d)    Collect rents more than thirty (30) days in advance; and any of the above acts, if done without written consent of the Lenders, shall be null and void.

By its acceptance of this assignment, Lender covenants and agrees that until there shall be a default by the Borrower in the performance of the covenants or in the making of the payments provided for in the mortgage above mentioned, Borrower shall receive and collect all rents, issues and profits under any lease and shall apply same to

payments on the said mortgage debt and to taxes, insurance and maintenance of said property.

Lender shall not be responsible for the control, care or management of the premises nor for the carrying out of the terms and conditions of any lease, but upon any default in performance of the covenants or in the making of the payments provided for in said mortgage, Lender may, at its option, receive and collect all said rents, issues and profits, and may, at its option, enter upon the mortgaged premises by its officers, agents and employees for the collection of the rents and for the operation of and maintenance of the mortgaged premises. The Borrower hereby authorizes Lender in general to perform all acts necessary for the operation and maintenance of the premises in the same manner and to the same extent that the Borrower might reasonably so act. Lender shall not be liable or accountable for any rentals which it does not receive, nor for its failure to collect any such rentals. After payment of all proper charges and expenses, Lender shall credit the amount of income which it may receive by virtue of the assignment to any amounts due Lender from the Borrower under the terms and provisions of this mortgage.

The failure of Lender to avail itself of any of the terms and conditions of this Agreement for any period of time shall not be construed to be a waiver of any of its rights hereunder. Payment in full to Lender of said debt and the full performance of said mortgage shall render this assignment void, but otherwise it shall remain in full force and effect with the right of Lender to assign the same whenever it may assign said mortgage.

28.    Acceleration; Remedies.  Upon Borrower's breach of any covenant or agreement of Borrower in this Instrument, including, but not limited to, the covenants to pay when due any sums secured by this Instrument, Lender at Lender's option, may declare all of the sums secured by this Instrument to be immediately due and payable without further demand, may foreclose this Instrument by judicial proceeding or power of Sale, shall be entitled to the appointment of a receiver, without notice, and may invoke any other remedies permitted by applicable law or provided herein. Lender may, at Lender's option, also foreclose this Instrument for any portion of the sums secured hereby which is then due and payable, subject to the continuing lien of this Instrument of the balance of the Instrument debt then due. Lender shall be entitled to collect in pursuing such remedies all costs and expenses allowed by applicable law including, but not limited to, attorney's fees and applicable statutory costs. The rights of Lender herein specified shall be in addition to Lender's rights under Section 254 of the Real Property Law.

29.    Power of Sale.    (a)    Upon default, Lender may, either with or without entry or taking possession of the mortgaged property as provided in this Mortgage or otherwise, personally or by its agents or attorneys and without prejudice to the right to bring an action for foreclosure of this Mortgage, sell the mortgaged property or any part thereof pursuant to any procedures provided by applicable law, including, without limitation, the procedures set forth in Article 14 of the New York Real Property Actions and Proceedings Law (and any amendments or substitute statutes in regard

thereto), and all estate, right, title, interest, claim and demand therein, and right of redemption thereof, at one or more sales as an entity or in parcels, and at such time and place upon such terms and after such notice thereof as may be required or permitted by applicable law.

(b)    All notices hereunder or under any applicable law pertaining hereto (including, without limitation, Article 14 of the New York Real Property Actions and Proceedings Law) shall be in writing and shall be deemed sufficiently given or served for all purposes when delivery (i) by personal service or courier service, and shall be deemed given on the date when signed for or, if refused, when refused by the person designated as an agent for receipt of service, (ii) by facsimile transmission, and shall be deemed given when printed confirmation of completion of transmission is generated by the sender's facsimile transmission, or (iii) by United States certified mail, return receipt requested, postage prepaid, and shall be deemed given two (2) days after being sent, to any part hereto at the following address or such other address of which a party shall have notified the party given such notice in writing as aforesaid. For purposes hereof, notices may be given by the parties hereto or by their attorneys.

(c)    Nothing herein shall (i) be, or be deemed to be, a release or impairment of the indebtedness evidenced by the Note or of this Mortgage, or (ii) limit or otherwise prejudice in any way the rights of Lender to proceed against any entity or person whatsoever with respect to any guaranties, or similar rights to payment or performance; nor shall such limitation of liability apply if and to the extent that Borrower takes any action by which Borrower seeks to require that further foreclosure proceedings proceed judicially under Article 13 of the New York Real Property Actions and Proceedings Law ("RPAPL") rather than non-judicially under Article 14 of the RPAPL or otherwise delays, impedes, enjoins, prevents or frustrates the non-judicial foreclosure of this Mortgage or the use by Lender of its remedies under Article 14 of the RPAPL, unless Borrower ultimately obtains a final court order that the Lender was not entitled to exercise its remedies under Article 14.

30.    <u>Release</u>. Upon payment of all sums secured by this Instrument, Lender shall discharge this Instrument. Borrower shall pay Lender's reasonable costs incurred in discharging this Instrument.

31.    <u>Lien Law</u>. Borrower will receive advances hereunder subject to the trust fund provisions of Section 13 of the Lien Law.

32.    <u>Late Payment</u>. If any payment required to be made by Borrower in this Instrument or the Note is not made within ten (10) days of the date upon which it becomes due, Borrower shall pay to Lender with such payment an additional charge equal to five percent (5%) of the payment due or Twenty-Five Dollars ($25.00), whichever is greater.

33.    <u>Subsequent Liens</u>. In the event a mortgage or other lien, secondary and subordinate to the lien of this Mortgage, is placed upon the Property without the written consent of Lender, Lender may at Lender's option declare all of the sums secured by

this Instrument to be due and payable and Lender may invoke any remedy permitted by paragraph 28 of this Instrument.

IN WITNESS WHEREOF, Borrower has executed this Instrument or has caused the same to be executed by its representatives thereunto duly authorized.

1881 CENTRAL AVENUE LLC

By: _____
Wensong Chen, Member

And By: _____
Juanying Zheng, Member


STATE OF NEW YORK    )
                     ) SS.:
COUNTY OF ALBANY     )

On this _____ day of February, in the year of 2009, before me, the undersigned, personally appeared WENSONG CHEN, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

New York
12/31/09

STATE OF NEW YORK     )
                      ) SS.:
COUNTY OF ALBANY      )

On this _____ day of February, in the year of 2009, before me, the undersigned, personally appeared JUANYING ZHENG, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

**RECORD AND RETURN TO:**

John E. Jones, Esq.
Hinman, Howard & Kattell, LLP
700 Security Mutual Building
80 Exchange Street
P.O. Box 5250
Binghamton, NY 13902-5250



1881 Central Avenue:

ALL THAT CERTAIN TRACT, PIECE OR PARCEL OF LAND situate, lying and being in the Town of Colonie, County of Albany and State of New York, located on the northeasterly side of Central Avenue and more particularly bounded and described as follows:

BEGINNING at a point in the northeasterly line of Central Avenue, said point being the division line between lands owned by Ying Y. Lai on the northwest and lands now or formerly of R.E. Ogren et al.;

RUNNING thence along land of Ogres et al. North 64° 38' East 331.35 feet to land now or formerly of Hussey;

THENCE North 22° 39' 31" West, 200.41 feet to the other lands of Lai;

THENCE along lands of Lai South 64° 36' 07" West 340.93 feet to the northerly side of Central Avenue;

THENCE along the northeasterly side of Central Avenue South 25° 23' 53" East 200 feet to the point or place of beginning.

TOGETHER WITH an easement for ingress, egress and regress over a strip of land 25 feet in width and 163 feet in depth to be used in common with others and is further bounded and described as follows:

BEGINNING at a point distant 200.0 feet northerly as measured along the northeasterly side of Route 5 (Central Avenue) from the point of beginning heretofore described and runs:

A. N. 64 deg. 36 min. 07 sec. E., 163.0 feet along the lands to be conveyed;
B. thence through the lands now or formerly of Y. Y. Lai, N. 25 deg. 23 min. 53 sec. W. 25.00 feet to a point;
C. thence continuing through said Lai, S. 64 deg. 36 min. 07 sec. W., 163.0 feet to the North line of Route 5;
D. thence along said Route 5 (Central Avenue), S. 25 deg. 23 min. 53 sec. E., 25.0 feet to the point or place of beginning.


1885 Central Avenue:

ALL THAT TRACT OR PARCEL OF LAND situate in the Town of Colonie, County of Albany and State of New York, on the northeast side of Central Avenue, and more particularly bounded and described as follows:

BEGINNING at a point on the northeasterly side of Central Avenue, said point being the division line between lands now or formerly of Cheng and land now or formerly of Lai;

RUNNING thence northwesterly along the northeasterly side of Central Avenue 191.50 feet;

THENCE North 49° 35' 20" East 360.07 feet;

THENCE South 33° 28' 03" East 141.22 feet;

THENCE South 40° 19' 12" East 51.32 feet;

THENCE South 49° 35' 20" West 342.89 feet to the northeasterly side of Central Avenue and the point or place of beginning.

Said premises is also known as Lot 13 on Block 1 of Section 29.10 in the County of Albany, #1885 Central Avenue.



### Albany County Clerk
### 32 North Russell Rd.
### Albany, NY 12206-1324

**Return to:**

HINMAN HOWARD & KATTELL
700 SECURITY MUTUAL BLDG
80 EXCHANGE ST
BINGHAMTON NY 13902

**Instrument**      **Assignment of rent**

**Document Number:**   10365294      Book: 2944   Page: 411

**Grantor**

1881 CENTRAL AVENUE LLC

**Grantee**

WILBER NATIONAL BANK

**Number of Pages:**   5

**Recorded Date/Time**   03/04/2009 at 2:55 PM

**Receipt Number**   . 504240

**Note:**   ** DO NOT REMOVE – THIS PAGE IS PART OF THE DOCUMENT **

THIS PAGE CONSTITUTES THE CLERK'S ENDORSEMENT, REQUIRED BY SECTION 316-a(5) &

319 OF THE REAL PROPERTY LAW OF THE STATE OF NEW YORK.

*Thomas G. Clingan*

Thomas G. Clingan, County Clerk



Albany County Clerk
Deed Books (Record Room)
Book 2944 Page 412

Loan Number 1042475

## ASSIGNMENT OF LEASES AND RENTALS

This Agreement made this 27th day of February, 2009, between 1881 CENTRAL AVENUE LLC, a limited liability company with offices at 1881 Central Avenue, Albany, New York  12205 (Owner) and WILBER NATIONAL BANK, a national banking association having its principal office at 245 Main Street, Oneonta, New York (the Bank).

### WITNESSETH:

Owner is the present owner in fee simple of certain real property more fully described in a mortgage in the sum of $1,220,000.00 made this day by Owner to Bank which is to be recorded in the Office of the Albany County Clerk contemporaneously herewith (the premises), and which premises are located at 1881 and 1885 Central Avenue, Albany, New York  12205 as more particularly described on annexed Schedule A.

Bank, as a condition to accepting said mortgage, has required an assignment of all leases, rentals and profits from the premises as additional security for the indebtedness represented by said mortgage and for the payment of taxes, insurance and maintenance of said premises.

NOW, THEREFORE, in consideration of the foregoing and the sum of One Dollar ($1.00) paid by Bank to Owner, the receipt whereof is hereby acknowledged, the Owner hereby assigns, transfers and sets over to Bank, its successors and assigns, as additional security for the indebtedness, all existing leases and any extensions or renewals thereof, together with all the rights and privileges of the Owner under said leases, and together with all rents, earnings, issues and profits which may become due and payable thereunder or by virtue of any lease which may be executed in the future, written or verbal, or any other agreement for the use or occupancy of the premises, and any security deposit made by any tenant under any such lease.

The Owner covenants that up to the date of this assignment, the Owner has faithfully performed and fulfilled all covenants under any lease and will continue to do so during the term of the lease, so long as said mortgage shall be in effect, and will not by the Owner's own failure or fault at any time during the term of said lease give any lessee just cause to terminate any lease. The Owner further covenants that there is no other assignment of Owner's interest in any lease in effect, that no substantial modification whatever of any such lease has been executed or granted, either orally or in writing, that no tenant is in default under any lease, and that the leases are in full force and effect according to their original terms.

Pursuant to Section 291-f of the Real Property Law, the Owner covenants and agrees that so long as said mortgage shall be unpaid, the Owner will not, without consent of the Bank:

Albany County Clerk
Document Number 10365294
Rcvd 03/04/2009 2:55:54 PM



A-0118075

(a)     Cancel or accept surrender of any lease or any renewal or extension thereof;

(b)     Reduce the rent or modify the terms of any lease or any renewals or extensions thereof, either orally or in writing, so as to decrease the terms thereof or in any way substantially reduce the value of the property or the equity of the mortgagee therein;

(c)     Consent to an assignment of any lessee's interest in any lease which will relieve any lessee of liability for the payment of rent and the performance of the terms and conditions of the lease;

(d)     Collect rents more than thirty (30) days in advance; and any of the above acts, if done without written consent of the Bank, shall be null and void.

By its acceptance of this assignment, Bank covenants and agrees that until there shall be a default by the Owner in the performance of the covenants or in the making of the payments provided for in the mortgage above mentioned, Owner shall receive and collect the rents, issues and profits under any lease and shall apply same to payments on the said mortgage debt and to taxes, insurance and maintenance of said property.

Bank shall not be responsible for the control, care or management of the premises nor for the carrying out of the terms and conditions of any lease, but upon any default in performance of the covenants or in the making of the payments provided for in said mortgage, and the Owner's failure to cure such default within any time permitted by the terms of the mortgage, Bank may, at its option, receive and collect all said rents, issues and profits, and may, at its option, enter upon the mortgaged premises by its officers, agents and employees for the collection of the rents and for the operation of and maintenance of the mortgaged premises, the Owner hereby authorizing Bank in general to perform all acts necessary for the operation and maintenance of the said premises in the same manner and to the same extent that the Owner might reasonably so act. Bank shall not be liable or accountable for any rentals which it does not receive, nor for its failure to collect any such rentals. After payment of all proper charges and expenses, Bank shall credit the amount of income which it may receive by virtue of this Assignment to any amounts due Bank from the Owner under the terms and provisions of said mortgage.

The failure of Bank to avail itself of any of the terms and conditions of this Agreement for any period of time shall not be construed to be a waiver of any of its rights hereunder. Payment in full to Bank of said debt and the full performance of said mortgage shall render this Assignment void, but otherwise it shall remain in full force and effect with the right of Bank to assign the same whenever it may assign said mortgage.

All the covenants and agreements herein contained on the part of either party shall apply to and bind their executors, administrators, distributees, successors and assigns.

IN WITNESS WHEREOF, the Owner has caused this instrument to be executed the day and year first above written.

1881 CENTRAL AVENUE LLC

By: _____
Wensong Chen, Member

And By: _____
Juanying Zheng, Member

STATE OF NEW YORK )
                  ) SS.:
COUNTY OF ALBANY )

On this _____ day of February, in the year of 2009, before me, the undersigned, personally appeared WENSONG CHEN, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

STATE OF NEW YORK )
                  ) SS.:
COUNTY OF ALBANY )

On this _____ day of February, in the year of 2009, before me, the undersigned, personally appeared JUANYING ZHENG, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

RECORD AND RETURN TO:
John E. Jones, Esq.
Hinman, Howard & Kattell, LLP
700 Security Mutual Building
80 Exchange Street
P.O. Box 5250
Binghamton, NY 13902-5250

## SCHEDULE A DESCRIPTION

1881 Central Avenue:

ALL THAT CERTAIN TRACT, PIECE OR PARCEL OF LAND situate, lying and being in the Town of Colonie, County of Albany and State of New York, located on the northeasterly side of Central Avenue and more particularly bounded and described as follows:

BEGINNING at a point in the northeasterly line of Central Avenue, said point being the division line between lands owned by Ying Y. Lai on the northwest and lands now or formerly of R.E, Ogren et al.;

RUNNING thence along land of Ogres et al. North 64° 38' East 331.35 feet to land now or formerly of Hussey;

THENCE North 22° 39' 31" West, 200.41 feet to the other lands of Lai;

THENCE along lands of Lai South 64° 38' 07" West 340.93 feet to the northerly side of Central Avenue;

THENCE along the northeasterly side of Central Avenue South 25° 23' 53" East 200 feet to the point or place of beginning.


1885 Central Avenue:

ALL THAT TRACT OR PARCEL OF LAND situate in the Town of Colonie, County of Albany and State of New York, on the northeast side of Central Avenue, and more particularly bounded and described as follows:

BEGINNING at a point on the northeasterly side of Central Avenue, said point being the division line between lands now or formerly of Cheng and land now or formerly of Lai;

RUNNING thence northwesterly along the northeasterly side of Central Avenue 191.50 feet;

THENCE North 49° 35' 20" East 360.07 feet;

THENCE South 33° 28' 03" East 141.22 feet;

THENCE South 40° 19' 12" East 51.32 feet;

THENCE South 49° 35' 20" West 342.89 feet to the northeasterly side of Central Avenue and the point or place of beginning.

Said premises is also known as Lot 13 on Block 1 of Section 29.10 in the County of Albany, #1885 Central Avenue.