UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

---

In Re:

1881 Central Avenue, LLC,

Debtor.

Case No.: 12-12394-1-rel
Chapter 11

---

### MEMORANDUM OF LAW OF COMMUNITY BANK, N.A. IN SUPPORT OF MOTION TO DISMISS AND FOR ALTERNATIVE RELIEF

Community Bank, N.A., successor by merger to Wilber National Bank ("Community Bank" or "Bank") submits this Memorandum of Law in support of its Motion to Dismiss this Bankruptcy for Cause and in the alternative to lift the automatic stay, and in the alternative to appoint a Chapter 11 Trustee.

### STATEMENT OF FACTS

By Mortgage Note dated February 27, 2009, the Debtor, 1881 Central Avenue, LLC borrowed the principal amount of $1,220,000.00 from the Bank. The loan was secured by a mortgage on two parcels of real property owned by the Debtor, 1881 and 1885 Central Avenue, Albany, New York. Debtors also gave Community Bank an Assignment of Rents. Mervis Aff., par. 3-5; Exhs. A, B). The two parcels contain a restaurant, 4-bedroom apartment unit, 27-unit motel and a parking lot. (Mervis Aff., par. 9; Exh. C).

Less than a year later, the Debtor defaulted by failing to make principal or interest payments due February 2, 2010 and have made no payments since. On April 5, 2010, Community Bank filed an action seeking foreclosure of its mortgage on both 1881 and 1885 Central Avenue. In Fall, 2011, the Bank obtained an appraisal from

Bauer Appraisal Group, Inc. It concluded that both parcels taken together had a fair market value of $1,250,000.00 or $875,000.00 if they needed to be liquidated immediately. (Mervis Aff., par. 12; Exh. C).

According to the October 2011 Appraisal Report, Mr. Chen, the Debtor's representative, said that the Debtor operated the restaurant on the property, which grossed approximately $200,000.00 per month, as well as the motel, which grossed a few thousand dollars per year. He said that there were no leases on the property. The Bank was also told that there were no leases and no tenants, and therefore, was not able to execute on its Assignment of Rents after the February 2010 default. (Mervis Aff., pars. 9, 10; Exh. C, pp. 9-10). The Bank's first notice of a tenant came only shortly before the scheduled foreclosure sale. Mr. Li, identifying himself as the tenant, called and said he was surprised by the scheduled foreclosure sale. He reported that he had been paying $10,000.00 per month rent for the previous year.

The Debtor, through three different attorneys, pursued a defense of the foreclosure proceeding. Nevertheless, on August 9, 2012, a Judgment of Foreclosure and Sale was entered against the Debtor, fixing the amount due to the Bank at $1,411,736.25 together with interest at the Note rate of 7.2% for the period May 3 through August 9, 2012 as well as taxation of $1,675.00 and attorneys' fees of $8,972.50. (Mervis Aff., par. 13). The foreclosure sale was scheduled for September 14, 2011.

The day before this foreclosure sale, on September 13, 2012, the Debtor filed its Voluntary Chapter 11 Petition. (Exh. D).

The Schedules of the Debtor state that this is a single asset real estate bankruptcy as defined in 11 U.S.C. §101(51)(B). According to the Schedule, there is *no* unsecured debt. The only secured creditors are Community Bank with a claim of $1,461,000.00 and the Town of Colonie Assessor's Office with a claim of $180,000.00. The Debtor schedules only two assets: A checking account containing $2,000.00 and real property at 1881 Central Avenue, which the Debtor values at $1,800,000.00. The Debtor still owns the parking lot at 1885 Central Avenue. However, this property is not scheduled as an asset, even though it accounts for some 40% of the value of the entire site, according to the tax assessment valuations. (Mervis Aff., pars. 16-19; Exh. E; Exh. C, pp. 52-53).

The schedules also state that the property is leased to an entity called 1881 Central Buffet, Inc., attn Eric Li, with an address of 1881 Central Ave., contrary to the earlier claims that there were no tenants on the property. The schedules report rent payments of $10,000.00 per month, apparently dating back to January 1, 2010. The Debtors do not report that they have any "estimated average future monthly expenses" whatsoever.

The Debtor further states that its intention is to retain the property at 1881 Central Avenue although it does not say whether it intends to reaffirm the debt or take other steps as allowed by the Bankruptcy Code. The Debtor states that it intends to assume the lease.

Community Bank has made a separate motion for sequestration and turnover of the $10,000.00-a-month rent stream, and in the alternative, an order enjoining use of the rents except to pay Community Bank's debt and for other uses as approved by the

Court, and for an accounting of past rents (given that the Debtor had represented that there was no tenant.)

Community Bank now moves for an order dismissing this case or in the alterative lifting the automatic stay and/or appointing a Chapter 11 Trustee.

## ARGUMENT

### POINT I

### THIS CASE SHOULD BE DISMISSED FOR CAUSE

Under 11 U.S.C. §1112(b), the "court shall convert a case under this chapter to a case under Chapter 7 or dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, if the movant establishes cause." As set forth below, even though this case is in its early stage, there is cause to dismiss it.

The statutory definition of "cause" for dismissals includes "unauthorized use of cash collateral substantially harmful to 1 or more creditors ...." 11 U.S.C. 1112(b)(4)(D). The $10,000.00 monthly rental payments are Community Bank's cash collateral given the Mortgage and Assignment of Rents. In re Northport Marina Associates, 136 Bankr. 911 (Bankr. E.D.N.Y. 1992). The Bank does not consent to the Debtor's use of these funds, nor has the Court issued a cash collateral order. On information and belief, the Debtor is using these payments. Community Bank is substantially harmed by the Debtor's use of the rents because it is under-secured and is receiving no payments in any form. This alone is a basis to dismiss for cause.

Other statutory factors for dismissal include "(A) substantial or continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation" and "(B) gross mismanagement of the estate ..." 11 U.S.C. 1112(b)(4)(A) and (B). These factors are present here as well.

Even at this early stage, Community Bank respectfully submits that it is clear that reorganization is not possible. According to the schedules, this is a single-asset real estate case in which the Debtor's only income is $10,000.00 a month in rent. The Debtor cannot use this income to reorganize. It already assigned the rent to Community Bank. As set forth in the companion motion, since the Bank has taken all steps necessary to assert its interest in the rents, rent is property of the Bank – and not the Estate – until the mortgage loan is repaid. See, Soho 25 Retail, LLC v. Bank of America, 2011 Bankr. LEXIS 1257 at *22 (Bankr. S.D.N.Y. March 31, 2011). Alternatively, the rents may be property of the Estate, but their use is limited to repayment of the mortgage and other related and necessary expenses, such as taxes and maintenance. In re Southside House, LLC, 474 B.R. 391 (Bankr. E.D.N.Y. 2012). Finally, as noted, at a minimum, the rent is the Bank's cash collateral. Since the Bank does not agree to its use and the Court has not issued a cash collateral order, the Debtor may not use the rent. Instead, it has the duty to "segregate and account for any cash collateral in the [its] possession, custody or control." 11 U.S.C. §363(c)(4).

Even if the Debtor could use the rents, it simply cannot reorganize on $10,000.00 a month. Monthly mortgage payments, according to the Note, are $9,606.18 a month. The Debtor has not made any payments since February, 2010, resulting in a scheduled Community Bank claim of $1,461,000. The scheduled tax claim is $180,000. With this

level of accumulated debt and income, there is no reasonable prospect of reorganization. Moreover, there must be expenses such as maintenance and insurance. The Debtor schedules *no* monthly expenses, which is not credible.

As for assets, the Debtor schedules $2,000 in cash, plus its property at 1881 Central Ave., which it values at $1.8 million, with no support cited for this figure. In contract, the Bank's appraiser valued 1881 Central Ave. *and* 1885 Central Ave. as having a combined value of far less -- $1,250,000 (or $875,000 for immediate liquidation). At this more realistic valuation, there is absolutely no equity and the Bank is significantly unsecured. Moreover, the Debtor did not schedule its parking lot at 1885 Central Avenue, even though comparing the tax assessments of 1881 and 1885 Central Ave, this parcel contributes some 40% of the value of the entire site.

In short, nothing in this case suggests the Debtor will be able to reorganize. All indication is that this filing is merely designed to frustrate Community Bank by stopping the foreclosure sale scheduled for the day after the petition was filed.

There is also evidence of gross mismanagement causing continual losses. The motel property is underutilized. Mr. Chen told the appraiser it brings in only a few thousand dollars per year. The operation and management of the restaurant is a question mark – is there a tenant as represented now, or is it owner-occupied as Mr. Chen said one year ago? The misrepresentations on the schedules also indicate mismanagement. The Debtor did not schedule the valuable parking lot. The Debtor did not schedule any monthly expenses -- it is not credible that there are none. Mr. Chen's earlier statement to the appraiser that the Debtor was operating the restaurant and earning $200,000.00 per month is also not credible. His claim to the appraiser that the

Debtor operates the motel and earns a few thousand dollars per year is either incredible or shows gross mismanagement.

"There need not be a significant diminution in the estate to satisfy §1112. All that need be found is that the estate has suffered some diminution in value." In re East Coast Airways, Ltd., 146 B.R. 325, 336 (Bankr. E.D.N.Y. 1992), cites, In re Kanterman, 88 B.R. 26, 29 (S.D.N.Y. 1988).

As well as the statutory definition of cause for dismissal, cause law holds that a Chapter 11 petition should be dismissed when it is filed in bad faith. Squires Motel, LLC v. Gance, 426 B.R. 29, 34 (N.D.N.Y. 2010); C-TC 9th Ave. P'ship, 113 F.3d 1304, 1310-11 (2nd Cir. 1997); Adirondack Mines v. U.S. Trustee, 210 U.S. Dist. LEXIS 122209, *4 (N.D.N.Y. November 16, 2010).

There is a two-prong test for determining bad faith. "First, the movant must demonstrate the objective futility of the reorganization process such that at the time of filing there was no reasonable probability that the Debtor would eventually emergence from bankruptcy proceedings. [citations and internal quotations omitted]. Second, in demonstrating subjective bad faith, the movant must show that there was no reasonable likelihood that the Debtor intended to reorganize." Squires Motel, LLC v. Gance, supra, 426 B.R. at 34.

Here, the first fact is met because reorganization is not possible, as set forth above.

The second factor in finding a bad faith filing is the question of "subjective bad faith." The Second Circuit has used eight factors of indicative of a bad faith filing. C-TC

<a>
</a>
<a>
</a>

9th Ave. P'ship v. Norton Co., Super, 113 F.3d at 1311. These factors are present here as follows:

**1.    The debtor has only one asset;**

Yes. This is a single asset real estate filing.

**2.    The debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;**

Yes. The Debtor has scheduled no unsecured creditors.

**3.    The debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;**

Yes. The Debtor has been in default on its mortgage payments to Community Bank since February 2010. The Debtor's property at both 1881 and 1885 Central Ave. was scheduled to be sold at foreclosure the day after this Chapter 11 filing was made.

**4.    The debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;**

Yes. There are no unsecured creditors, and the only dispute here is between the Debtor and Community Bank over non-payment of the mortgage. The Debtor also owes $180,000.00 in real estate taxes, which will be addressed in the foreclosure sale.

**5.    The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;**

Yes. The foreclosure proceeding was brought in April 2010. The Debtor answered and also opposed a motion for summary judgment, using three different attorneys. The Foreclosure Judgment was filed in August 2011. The foreclosure sale was scheduled for September 14, 2012. The day before that, September 13, 2012, the Debtor filed its petition herein.

**6.     The debtor has little or no cash flow;**

The Debtor claims $10,000.00 per month cash flow from rents. However, these rents were assigned to Community Bank and should not be used for any purpose other than paying Community Bank's debt or taxes and necessary maintenance on the property, as set forth in the companion motion for sequestration of rents. Even if the rents could be used for other purposes, Community Bank respectfully submits that there will not be sufficient cash flow to fund a filing.

**7.     The debtor can't meet current expenses including the payment of personal property and real estate taxes; and**

Yes. The Debtor has not paid its mortgage since February 2010 and is significantly in arrears ($180,000.00) on property tax. Information regarding other expenses is not available because the Debtor alleges in its Schedules that it has no expenses.

**8.     The debtor has no employees.**

Yes. According to Schedule of Business Income and Expenses (Exh. D), the Debtor pays no payroll, payroll taxes, unemployment taxes, worker's compensation or employee benefits. This indicates that there are no employees.

Similar factors are used by the Northern District. Squires Motel v. Gance, *supra*, 426 B.R. at 35 and Adirondack Mines v. U.S. Trustee, *supra*, 2010 U.S. Dist. LEXIS 12209 at *6, both citing C-TC 9th Ave. P'ship, *supra*.

Finally, the Schedules themselves indicate bad faith on the part of the Debtor on making their filings. In October 2011, the Debtors told the appraiser that they were operating the premises themselves. They now represent to the Court in their Schedules that the property has been leased since January 2010 (as indicated by their report of

$10,000.00 per month rental income and $120,000.00 a year income in 2010 and 2011). The Debtors should not abuse the bankruptcy system by claiming that they are entitled to reaffirm a fictitious or abusive contract with a "tenant," if they are in fact operating the business themselves.

In addition, the Debtor simply did not disclose a major asset, the parking lot at 1885 Central Avenue. Although the Appraiser did not value this property separately, comparison of the tax assessment values of 1881 and 1885 Central Ave. indicates that 1885 Central contributes nearly 40% of the value of the entire site. The Debtor does not have the choice of "excluding" this asset from the bankruptcy and keeping the value for itself. All assets must be reported to the Court.

Therefore, it is respectfully submitted that the requirements for dismissal for cause are met here. "Despite the fundamental purpose of Chapter 11 proceedings to rehabilitate economically distressed business, this goal must be compromised where the operations of the debtor in possession continually erode the interests of creditors without a bright picture for reversing these losses in the future." In re Photo Promotion Assocs., Inc., 47 B.R. 454, 458 (Bankr. S.D.N.Y. 1985).

## POINT II

### IN THE ALTERNATIVE, THE COURT SHOULD GRANT RELIEF FROM THE AUTOMATIC STAY

If the Court does not dismiss the bankruptcy out of hand, Community Bank respectfully submits that it should, at a minimum, issue an Order pursuant to 11 U.S.C. §362(d)(1) and (2) and Federal Rules of Bankruptcy Procedure 4001 and 9014 for relief

from the automatic stay imposed by 11 U.S.C. §362(d)(1) and (2) with regard to Debtor's interest in real property located 1885 Central Avenue, Albany, New York.

The Order should also clarify that Community Bank may proceed with its foreclosure on property located at 1885 Central Avenue, Albany. This is property of the Debtor, although it has not been scheduled.

The Debtor schedules its property at 1881 Central Avenue at $1,800,000. If correct, this would give it equity compared to the scheduled debt of $1,641.000. However, the $1.8 million figure is unsupported and extremely suspect. The Bank's appraisal concluded that 1881 and 1885 Central Avenue <u>taken together</u> were worth only $1,250,000.00. This appraised value is far more credible than the value the Debtor assigns and it shows that the Debtor has no equity in the property.

Since this is a single asset real estate case, Community Bank recognizes that the property is necessary to an effective reorganization. However, the Debtor has the burden to show that there is a prospect of an effective reorganization. Even though the Debtor is still within the exclusivity period to propose a plan, it still must establish a "realistic chance or plausibility for reorganization" to continue in bankruptcy. <u>In re MHS Management Group</u>, 2009 Bankr. LEXIS 3580, *15 (Bankr. N.D.N.Y. October 26, 2009) (lifting the stay). However, as set forth herein, there is no reason to believe the Debtor can make this showing. Therefore, the automatic stay should be lifted.

## POINT III

## IN THE ALTERNATIVE A §1104 TRUSTEE SHOULD BE APPOINTED

Finally, should the Court determine that it is too early to dismiss the case or to grant the motion to lift the automatic stay, Community Bank respectfully submits that at a minimum, the Court should appoint a Trustee under 11 U.S.C. §1104.

The Code provides that grounds for appointment of an 11 U.S.C. §1104 trustee include the following:

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause;

(2) if such appointment is in the interests of creditors; or

(3) if grounds exist to convert or dismiss the case under section 11 U.S.C. §1112, but the court determines that the appointment of a trustee or an examiner is in the best interests of creditors and the estate.

Courts have ordered the appointment of Trustees in cases of mismanagement or incompetence. Modanlo v. Ahan, 342 B.R. 238, 243 (D. Md. 2006). Determinative factors "include the debtor's past and present performance and prospects for rehabilitation, the confidence of the business community and creditors in the debtor's management, and the benefits to be derived from the appointment of a Trustee balanced against the costs of appointment." Taub v. Taub, (In re Taub), 413 B.R. 69, 2009 Bankr. LEXIS 2382 (Bankr. E.D.N.Y., 2009).

As set forth above, the filing and the Debtor's prior behavior indicate a mix of mismanagement and dishonesty. The Debtor failed to disclose in its schedules the valuable parking lot at 1885 Central Ave. that contributes nearly 40% of the property's value. It schedules no monthly expenses. It is in all likelihood using the Bank's rents, which are cash collateral, without authorization. Previously, it essentially hid the existence of a tenant from the Bank and the appraiser, preventing the Bank from executing on its assigned rents after the Debtor stopped paying its mortgage in February 2011. Mr. Chen's statement to the appraiser in October 2011 that the restaurant was grossing $200,000 a month lacks credibility. The Debtor has a 27-unit motel and reported to the appraiser in October 2011 that it took in only a few thousand dollars per year – gross income. (Exh. C, p. 9). If true, this indicates mismanagement.

The appointment of the trustee would be the interest of the only two creditors in this case, Community Bank and the Town of Colonie in that it would prevent the dissipation of cash and other assets and insure that record keeping and reporting was done properly. See, e.g., Modanio v. Ahan, *supra*. Community Bank respectfully submits that the benefits to itself and the Town of Colonie, the only creditors, from the appointment of a trustee would outweigh the costs involved.

## CONCLUSION

### THE RELIEF REQUESTED BY COMMUNITY BANK SHOULD BE GRANTED

The Debtor made its Chapter 11 filing the day before Community Bank's scheduled foreclosure sale. The Bank and the taxing authority are the only creditors.

There are no unsecured creditors in this bankruptcy. The circumstances indicate that the bankruptcy is not in good faith and should be dismissed.

In the alternative, there is no good reason not to lift the automatic stay and allow Community Bank's foreclosure sale to proceed so that the two-party dispute between it and the Debtor may reach its final resolution in State Court.

In the alternative, given that this case is in its early stages, if it is to continue, the Court should appoint a Chapter 11 Trustee so that there is no further misconduct or dissipation of assets on the part of the Debtor.

Dated:  October 11, 2012
        Binghamton, New York

Respectfully submitted,

/s/ Harvey D. Mervis
Harvey D. Mervis, Esq.
HINMAN, HOWARD & KATTELL, LLP
Harvey D. Mervis, Esq. and Amy Shapiro, Esq., of counsel
Attorneys for Community Bank, N.A.
Office and Post Office Address
80 Exchange Street
P.O. Box 5250
Binghamton, New York 13902-5250
Telephone: (607) 723-5341